**UNITED STATES of America,
Plaintiff–Appellee.**

v.

**Linwood GRAY, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Harry L. STALEY,
Defendant–Appellant.**

Nos. 87–5502, 87–5529.

United States Court of Appeals,
Fourth Circuit.

Argued June 9, 1988.

Decided July 27, 1988.

**137**

Thomas F. O'Neil, III, Asst. U.S. Atty.
(Breckinridge L. Willcox, U.S. Atty., Robert
J. Mathias, Asst. U.S. Atty., Baltimore,
Md., on brief), for plaintiff-appellee.

Before MURNAGHAN, CHAPMAN
and WILKINS, Circuit Judges.

MURNAGHAN, Circuit Judge:

While incarcerated for federal income
tax violations, Linwood Gray used threats
of bodily harm to force his defense lawyer
to return, in effect, a parcel of real estate
that Gray had used to pay the lawyer's
fees. The house was occupied by Gray's
common law wife, in whose name Gray had
entered title before conveying it to his law-
yer. Faced with threats of harm if he
attempted to collect rent or evict Gray's
wife, the lawyer agreed to turn over title to
Gray's friend, Harry L. Staley, who as-
sumed responsibility for a mortgage the
lawyer had taken out on the property. In
the process, the lawyer relinquished a sig-
nificant amount of equity in the property.

After the lawyer notified authorities
about the threats, Gray was tried and con-
victed on four counts: count one, conspir-
acy to extort and conceal property in viola-
tion of 18 U.S.C. § 371; count two, extor-
tion in violation of 18 U.S.C. § 875(b);
count three, a separate extortion count un-
der 18 U.S.C. § 875(b); and count four,
concealment of property from the Internal
Revenue Service in violation of 26 U.S.C.
§ 7206(4). Gray was sentenced to five
years on count one, twenty years each on
counts two and three, and three years on
count four. While the terms meted out on
counts one and two were consecutive, the
terms for counts three and four were con-
current with counts one and two. Gray's
sentence, when consolidated, effectively to-
taled twenty-five years.

Staley was tried and convicted on counts
one and four. He received a suspended
sentence of three years on count one, with
five years probation and requirements of
community service and restitution. On
count four, Staley was sentenced to three
years, suspended and concurrent with

Paul Michael Weiss (Paul M. Weiss, P.A.,
Baltimore, Md., Harry J. Trainor, Jr.,
Greenan, Walker, Steuart & Meng, Land-
over, Md., on brief), for defendants-appel-
lants.

count one, together with a concurrent three year probation term.

An appeal from the results of that first trial led to reversal because of the trial court's failure to question the jury about the possible prejudicial effect of newspaper articles published during the trial. *See United States v. Gray*, 788 F.2d 1031 (4th Cir.1986). Upon retrial, both defendants were again convicted on counts one and four. However, Gray was acquitted on counts two and three. The sentence imposed on Gray was five years on count one and three years on count four to run consecutively. Staley again received three year concurrent suspended sentences and a five year probation term.

### I.

With the sentences for count two and count three eliminated by the verdict of acquittal, Gray has argued that his sentences for count one (five years) and count four (three years) could not be changed from the concurrent status that existed after the first trial to a consecutive status following the second trial. Gray bases his argument on the assertion that concurrent sentences on those counts, totaling five years, had been vindictively augmented after his successful appeal to consecutive sentences totaling eight years. Of course, that superficially arresting argument has carefully omitted all mention of the fact that following the original convictions his sentence totaled twenty-five years. There was no question but that both sentences fell within the statutory maximum imposed by law.

It must be remembered that we are not merely engaged in an arithmetic exercise. Gray argues that the spectre of *North*

*Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), arises here because he has, in effect, received more severe punishment the second time round. The doctrine of *North Carolina v. Pearce* normally allows such an increased sentence only if identifiable conduct justifying the increase has occurred during the period between sentencings. *Id.* 395 U.S. at 726, 89 S.Ct. at 2081. Here, admittedly, there was no such identifiable conduct during the period between sentencings that would justify a more severe sentence.

■ However, it is apparent that there has been no such invidious increase here. The rationale of *North Carolina v. Pearce* is directed against the possibility or appearance of vindictiveness. *See id.* 395 U.S. at 725, 89 S.Ct. at 2080–81 (due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial"). That disallowed possibility is not present here. It is not proper in Gray's case to say first sentence five, second eight. The correct reading is the first sentence twenty-five years, the second eight years. In the absence of any indication of vindictiveness, the sentences meted out are perfectly justifiable under the "aggregate package" rule. In *United States v. Raimondo*, 721 F.2d 476 (4th Cir.1983), we indicated that resentencing will not be considered vindictive if the ultimate sentence for one or more counts does not exceed that given for all counts sentenced at the conclusion of the first trial.[1] *Id.* 721 F.2d at 478; *see also United States v. Shue*, 825 F.2d 1111, 1114–16 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987); *United States v. Hagler*, 709 F.2d

---

1. The aggregate package rule is strictly applied to protect defendants. In remanding for resentencing on the one remaining count out of nine on which the defendant in *Raimondo* (Bello) had been convicted, we noted that the new sentence "may not exceed the punishment initially imposed on all counts." 721 F.2d at 478. Bello's original aggregate sentence, for all nine counts, was 12 years without parole plus 5 years (consecutive) with parole eligibility. On remand, the district judge sentenced Bello to 17 years with no parole eligibility for any of the

term. When Bello appealed his new sentence, we applied the "aggregate package" rule and vacated the sentence, holding that the new sentence was limited to the equivalent of 12 years without parole plus 5 years with parole eligibility; thus the new sentence was limited to a non-parole term of 13 years and 8 months, the minimum he would be required to serve before becoming eligible for parole under the original aggregate sentence. *See United States v. Bello*, 767 F.2d 1065, 1070–71 (4th Cir.1985).

578, 579 (9th Cir.1983), *cert. denied,* 464 U.S. 917, 104 S.Ct. 282, 78 L.Ed.2d 260 (1983); *United States v. Busic,* 639 F.2d 940, 951 n. 12 (3d Cir.1981), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981).

## II.

■ Both Gray and Staley additionally argue that the trial court committed reversible error by refusing to admit into evidence an internal IRS referral report (the "Repp Report") indicating that Gray's former counsel was involved in a number of transactions possibly constituting criminal tax fraud. While the district court refused to admit the Repp Report, it agreed that the existence of the lawyer's tax problems and state of mind concerning those problems were relevant. Defense counsel were permitted to cross-examine on those issues. The defendants' purpose was to impeach or discredit the testimony of the lawyer by suggesting that, to lessen his own punishment, the lawyer was slanting his testimony in the government's favor. However, it was shown that the lawyer did not even learn of the existence or the contents of the Repp Report until *after* he had received limited immunity for a period including the tax year covered by the report. The report itself was therefore not relevant to determining the lawyer's state of mind concerning his potential tax problems when he testified.

■ Gray and Staley further argue that the report should have been admitted under Fed.R.Evid. 803(8) as an official report containing factual findings pursuant to an investigation. However, the Repp Report was only a tentative internal report not purporting to contain agency factual findings. In any event, admissibility under Fed.R.Evid. 803(8) is but permissive and not mandatory, with admissibility or nonadmissibility resting within the discretion of the trial court. We conclude that the report dealing with the lawyer's tax problems, many of which were unrelated to dealings with the defendants, was not relevant, and the district judge's barring of admissibility was not an abuse of discretion.

■ An attempt was also made to argue that evidence to impeach Gray's credibility, namely a bank robbery conviction, should not be admitted because the conviction involved was seventeen years old. Gray had been paroled twelve years before the instant trial, *i.e.,* in excess of the ten year time limit referred to in Fed.R.Evid. 609(b). However, a significant fact was not mentioned in the defendants' presentation on this point. Gray's parole was revoked in 1979 for parole violations and he was still incarcerated at the time of trial. The ten year time limit in Fed.R.Evid. 609(b) is therefore not applicable. *See United States v. McClintock,* 748 F.2d 1278, 1288–89 (9th Cir.1984), *cert. denied,* 474 U.S. 822, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985).

There was ample basis for a determination that the probative value of admitting the evidence of Gray's prior conviction outweighed its prejudicial effect. It is true that in *United States v. Cunningham,* 638 F.2d 696 (4th Cir.1981), we noted that the burden of establishing the admissibility of prior conviction evidence should be on its proponent and that the trial judge, in exercising his sound discretion, "should make an explicit finding on the record with respect to admissibility after he has had the benefit of a recital 'of the circumstances surrounding the admission of the evidence, and a statement of the date, nature and place of conviction.' " *Id.* 638 F.2d at 697–98 (citation omitted). Here the district judge stated:

> Where there has been a prior criminal activity followed by subsequent criminal activity, I think it does become relevant.... [U]nder the circumstances of this case, as I understand them, cross examination on that bank robbery charge will be admissible.

While perhaps a more detailed discussion would have been preferable, the defendants' counsel did not raise any contention at that time that prejudice outweighed probative value. If the defendants had done so, the trial judge would properly have been alerted to the making of a decision.

As things happened, however, he had no warning that the defendants wished for such a finding. If he had had an inkling of such a wish, he would, on the record before us, have had abundant support for a decision admitting the conviction. The evidence of an indication of an abuse of discretion on the part of the district judge is entirely lacking.

AFFIRMED.