UNITED STATES of America, Appellee,

v.

**Juan PIMIENTA–REDONDO, Defendant, Appellant.**

UNITED STATES of America, Appellee,

v.

**Alfredo PUPO, Defendant, Appellant.**

**Nos. 87–1948, 87–1949.**

United States Court of Appeals, First Circuit.

Heard Jan. 10, 1989.

Decided April 28, 1989.

---

Jose A. Fuentes–Agostini, San Juan, P.R., and Olga M. Shepard, Hato Rey, P.R., by Appointment of the Court, with whom Law Offices of Jose A. Fuentes–Agostini, San Juan, P.R., was on joint briefs, for defendants, appellants.

Lawrence S. Robbins, Dept. of Justice, Washington, D.C., with whom Daniel F. Lopez–Romo, U.S. Atty., and Warren Vazquez, Asst. U.S. Atty., Hato Rey, P.R., were on briefs, for the United States.

Before CAMPBELL, Chief Judge, COFFIN, BOWNES, BREYER, TORRUELLA and SELYA, Circuit Judges.

## OPINIONS EN BANC

SELYA, Circuit Judge.

Juan Pimienta–Redondo and Alfredo Pupo, defendants-appellants, were resentenced by the district court after we reversed their convictions for possession of marijuana with intent to distribute on one of two counts, affirmed on the second count, and remanded. *United States v.*

*Molinares Charris,* 822 F.2d 1213 (1st Cir. 1987). They argue that the revised sentences violated their due process rights and placed them in double jeopardy. We believe that the sentences were lawfully imposed and reject the appeals.

## I. BACKGROUND

Pimienta–Redondo and Pupo, along with six codefendants, were charged with two counts of possessing controlled substances with intent to distribute pursuant to 21 U.S.C. § 955a(a) (Count I) and § 955a(c) (Count II).[1] At trial, the government presented evidence that defendants were transporting marijuana in a Honduran-registered vessel and that, with permission from the Honduran government, the Coast Guard boarded the vessel for the purpose of enforcing United States law. *Molinares Charris,* 822 F.2d at 1215. The district court instructed the jury that for the purposes of Count I, a vessel of a foreign nation could be " 'subject to the jurisdiction of the United States on the high seas,' " *see* 21 U.S.C. § 955a, if the foreign nation " 'consents that the United States enforce its laws upon said vessel.' " *Id.* at 1216 (quoting jury instructions). The court charged the jury that for purposes of Count II, the vessel, when boarded by the Coast Guard, was within " 'the customs waters of the United States,' " *see* 21 U.S.C. § 955a(c), if the jury found beyond a reasonable doubt " 'that there was an arrangement between the government of Honduras and the United States, allowing the United States to board and enforce its laws upon the vessel.' " *Id.* at 1216 (quoting jury instructions).

The jury found defendants guilty on both counts. The district court thereafter sentenced all defendants. Pimienta–Redondo received five years imprisonment on each count, and Pupo received six years on each, with all sentences running consecutively. Concurrent 5–year special parole terms and $50 special assessments were also imposed. The record reflects no contemporaneous explanation by the judge of her reasons for sentence selection.

On appeal, defendants (the present appellants included) contended, *inter alia,* that the crimes charged constituted a single offense. Upon reviewing the district judge's instructions, a panel of this court concluded that "the jury was told in effect that an arrangement between Honduras and the United States could be the jurisdictional basis for a conviction on both counts." *Id.* at 1216. Although recognizing that we had in the past construed 21 U.S.C. §§ 955a(a)-(d) as covering separate offenses, *id.* at 1218 (citing *United States v. Christensen,* 732 F.2d 20, 23 (1st Cir.1984)),[2] we found

---

1. 21 U.S.C. § 955a provides, in pertinent part, as follows:

   **(a) Vessels of United States or vessels subject to jurisdiction of United States on high seas**

   It is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States on the high seas, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

   **(b) Citizens of United States**

   It is unlawful for a citizen of the United States on board any vessel to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

   **(c) Vessels within customs waters of United States**

   It is unlawful for any person on board any vessel within the customs waters of the United States to knowingly or intentionally manufacture or distribute, or to possess with intent to

   manufacture or distribute, a controlled substance.

   **(d) Intent or knowledge of unlawful importation into United States**

   It is unlawful for any person to possess, manufacture, or distribute a controlled substance—

   (1) intending that it be unlawfully imported into the United States; or

   (2) knowing that it will be unlawfully imported into the United States.

2. In *Christensen,* the defendant, a United States citizen, was aboard a vessel registered in the United States when the Coast Guard, finding over 50,000 tons of marijuana on board, seized the vessel in the vicinity of the Virgin Islands. 732 F.2d at 21. He challenged, on double jeopardy grounds, the imposition of consecutive 5–year sentences imposed for his conviction on two counts of possessing marijuana with intent to distribute under 21 U.S.C. § 955a(a) and § 955a(b), arguing that he had committed but one offense. Defendant contended that the four

this not to be "the case if the jurisdictional facts prerequisite for a conviction under subsection (c) are exactly the same for subsection (a)." *Molinares Charris*, 822 F.2d at 1218. We therefore held that the Coast Guard's boarding of the vessel with consent from the Honduran government could constitute the basis for a finding that the vessel was "within the customs waters of the United States" under section 955a(c), but could not, at the same time, make the vessel subject to the jurisdiction of the United States under 21 U.S.C. § 955a(a). Accordingly, we reversed the defendants' convictions on Count I, affirmed on Count II, and remitted the case for resentencing. *Molinares Charris*, 822 F.2d at 1216–18, 1223.

On remand, the district court sentenced Pimienta–Redondo to serve ten years on Count II and sentenced Pupo to twelve years on Count II. In addition, each was given a 5–year special parole term and assessed $50. Defendants appealed anew, asserting that the sentences were imposed in violation of their due process and double jeopardy rights. A panel of this court divided on the appeals. The panel majority, without reaching the double jeopardy ground, held that appellants had been denied due process. The dissent argued that the resentencing withstood the constitutional challenges. Subsequently, the panel opinion and dissent were withdrawn in order to permit the full court to consider appellants' claims. 856 F.2d 351 (1st Cir. 1988). We now proceed with our en banc opinion, which differs from the panel majority by concluding that, as a matter of federal constitutional law, the retrofitted sentences may stand.

## II. DUE PROCESS

### A

Relying upon *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), appellants claim that they were denied due process of law by the district court's enhancement of their sentences on Count II. In *Pearce*, the Court addressed the due process concerns which emerge when a defendant, having obtained reversal of a conviction on appeal, is subsequently retried for, and found guilty of, the same offense, and given a stiffer sentence by the same trial judge. Recognizing the inherent potential for abuse—that a defendant might be penalized for exercising appeal rights—the Court concluded:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

395 U.S. at 725, 89 S.Ct. at 2080 (footnote omitted).

It is important that the *Pearce* principle not be blown out of proportion. *Pearce* does not flatly prohibit resentencing, or even enhancement of sentence, after the accused has taken an appeal or otherwise taken advantage of some legal right. *See Chaffin v. Stynchcombe*, 412 U.S. 17, 24–28, 93 S.Ct. 1977, 1981–1983, 36 L.Ed.2d 714 (1973); *Colten v. Kentucky*, 407 U.S. 104, 114–20, 92 S.Ct. 1953, 1959–62, 32 L.Ed.2d 584 (1972); *Pearce*, 395 U.S. at 723, 89 S.Ct. at 2079; *see also Wasman v. United States*, 468 U.S. 559, 566, 104 S.Ct. 3217, 3221, 82 L.Ed.2d 424 (1984) (plurality opinion). Rather, the presumption envisioned in *Pearce* arises "only in cases in which a reasonable likelihood of vindic-

---

subsections of 21 U.S.C. § 955a outlined only a single offense, and, as a result, he could not be convicted for both § 955a(a) and § 955a(b). We disagreed, and concluded instead that Congress intended each subsection of § 955a to address a discrete offense—"preventing use of U.S. vessels [subsection (a)], discouraging U.S. citizens [subsection (b)], protecting U.S. customs waters [subsection (c)], and discouraging plans to import drugs into the United States [subsection (d)]." *Christensen*, 732 F.2d at 23 & n. 6. Since the defendant was a United States citizen and the master of a United States vessel carrying marijuana, we affirmed his 2–count conviction and the consecutive sentences. *Id*. at 23–24.

tiveness exists." *United States v. Goodwin*, 457 U.S. 368, 373, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982). Once this presumption blossoms, the prosecution must proffer evidence to overcome it; elsewise, vindictiveness is deemed established, and the due process clause requires invalidation of the challenged action. *Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081.

It follows that more than chronal proximity is required to bring *Pearce* into play; the presumption does not apply indiscriminately to all instances of detrimental action treading close upon the heels of a defendant's exercise of some legal right. *See Goodwin*, 457 U.S. at 384, 102 S.Ct. at 2494 (involving addition of felony count after defendant asked for a jury on misdemeanor charge); *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978) (discussing imposition of sentence after defendant stood trial, unsuccessfully, rather than plead to lesser offense); *Chaffin*, 412 U.S. at 26–27, 93 S.Ct. at 1982–83 (involving reconviction and resentencing by jury after new trial obtained); *Colten*, 407 U.S. at 116, 92 S.Ct. at 1960 (discussing imposition of sentence after defendant's election of *de novo* "second" trial in two-tier system proved unavailing); *see also Wasman*, 468 U.S. at 566, 104 S.Ct. at 3221. As such cases betoken, the Court has been chary of extending *Pearce* to precincts where, given the totality of the circumstances, the likelihood of actual vindictiveness is tiny. This case, we suggest, derives from that line.

**B**

▮ We have employed the *Pearce* presumption to ensure against " 'a reasonable apprehension of vindictiveness,' " *see*

*Longval v. Meachum*, 693 F.2d 236, 237 (1st Cir.1982), *cert. denied*, 460 U.S. 1098, 103 S.Ct. 1799, 76 L.Ed.2d 364 (1983), and we assume *arguendo* the suitability of that standard.[3] The presumption was devised as a proxy for actual evidence of vindictive motivation because "[m]otives are complex and difficult to prove." *Goodwin*, 457 U.S. at 373, 102 S.Ct. at 2488. But the blade has two edges: wielding it in too uninhibited a manner may serve to "block a legitimate response to criminal conduct." *Id.* Where the sentencing judge's motivation cannot be called fairly into question, there is no need to indulge in the conjecture, and run the risks, which the *Pearce* presumption necessarily entails. Absent proof of an improper motive—or some sound reason to suspect the existence of one—no reasonable apprehension of vindictiveness can flourish. *See Wasman*, 468 U.S. at 569, 104 S.Ct. at 3223 (where *Pearce* presumption inapplicable, defendant must affirmatively prove actual vindictiveness). Accordingly, on resentencing, if it is reasonably clear that the judge reshaped the impost merely as a means of bringing original sentencing intentions to fruition after some new development had intervened, a need for employing the *Pearce* presumption never arises. *See, e.g., United States v. Gray*, 852 F.2d 136, 138 (4th Cir.1988); *United States v. Bentley*, 850 F.2d 327, 328–29 (7th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 501, 102 L.Ed.2d 537 (1988); *United States v. Shue*, 825 F.2d 1111, 1116 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987); *United States v. Colunga*, 812 F.2d 196, 200 (5th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 165, 98 L.Ed.2d 120 (1987). Stated in different terms, there must be some evidence of actual, or at least apparent, vindictive moti-

---

**3.** Recent decisions suggest that *Pearce* likely prohibits enhanced sentences only when motivated by actual vindictiveness. *See Wasman*, 468 U.S. at 568, 104 S.Ct. at 3223 ("due process does not in any sense forbid enhanced sentences or charges, but only enhancement motivated by *actual vindictiveness* toward the defendant for having exercised guaranteed rights") (emphasis in original). Absent vindictiveness, enhanced sentences are constitutional despite any "inci-

dental deterrent effect they might have on the right to appeal." *Chaffin*, 412 U.S. at 29, 93 S.Ct. at 1984. This focus may well presage the demise of "reasonable apprehension" as the benchmark for judging due process claims of retaliatory sentencing, *see Wasman*, 468 U.S. at 574, 104 S.Ct. at 3225 (Stevens, J., concurring), but that is a bridge which need not be crossed today.

vation before a due process violation can be claimed.

■ This case is a fair exemplar. Here, the district court's adjustment of defendants' sentences on remand, fairly evaluated, does not signal retaliatory animus. Indeed, the authority to reshape a sentence when multicount convictions garner mixed reviews on appeal—some affirmed, some reversed—looms as an integral component of the trial judge's broad sentencing discretion.[4] *See Wasman*, 468 U.S. at 563–64, 104 S.Ct. at 3220–21. Society has a strong interest in ensuring that, in our criminal jurisprudence, punishment "will suit not merely the offense but the individual defendant." *Id.* at 564, 104 S.Ct. at 3220. The district court, in tailoring a sentencing package, protects this interest by considering a "breadth of information." *Id.* The offenses charged establish a permissible range of punishment and the court then designs the ultimate sentencing plan by considering the accused's actual conduct during the criminal enterprise, as well as his life, health, habits, and background. The myriad of other factors underlying the original sentence in a multiple count case are not necessarily altered when a defendant successfully appeals his conviction on one count. After an appellate court unwraps the package and removes one or more charges from its confines, the sentencing judge, herself, is in the best position to assess the effect of the withdrawal and to redefine the package's size and shape (if, indeed, redefinition seems appropriate). Seen in the light of these realities, retrofitting a sentence after a conviction is sustained in part and vacated in part seems altogether a sensible, fully legitimate response to criminal conduct.

Put another way, when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan. When the conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand, within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal. *See Bentley*, 850 F.2d at 328 ("whenever a reversal on appeal undoes a sentencing plan, or even calls the plan into question, the district court should be invited to resentence the defendant on all counts in order to achieve a rational, coherent structure in light of the remaining convictions"); *United States v. Diaz*, 834 F.2d 287, 290 (2d Cir.1987) (*Diaz II*) (trial judge could change sentence on remand to carry out original intention), *cert. denied,* —— U.S. ——, 109 S.Ct. 57, 102 L.Ed.2d 35 (1988); *United States v. Diaz*, 778 F.2d 86, 88–89 (2d Cir.1985) (*Diaz I*) (court of appeals remanded for sentencing on affirmed counts when lower court's sentencing plan would otherwise be thwarted by successful appeal of other counts); *United States v. Busic*, 639 F.2d 940, 947 (3d Cir.), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981) (like *Diaz II*).[5] Notwithstanding the sparseness of the record of the original sentencing hearing, it seems plain that, following this court's order of remand, the district judge "simply used a different way to implement [her] original

---

**4.** The newly-mandated "guideline sentencing" which has overtaken the federal courts, *see generally Mistretta v. United States,* —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); *United States v. Twomey,* 845 F.2d 1132 (1st Cir.1988), significantly cabins the district courts' discretion in structuring sentences, but does not entirely eliminate it. In any event, the guidelines were not applicable in the case.

**5.** There is some caselaw which—though perhaps distinguishable in terms of the breadth of the

mandate emanating from the first appeal—may be read to stand for the proposition asserted by appellants. *See United States v. Lewis,* 862 F.2d 748, 750 (9th Cir.1988) (authority to alter sentence on remand extended only to illegal portions, and did not empower district court to alter legal punishments previously imposed), *cert. denied,* —— U.S. ——, 109 S.Ct. 1169, 103 L.Ed.2d 227 (1989); *United States v. Henry,* 709 F.2d 298, 303, 306 (5th Cir.1983) (en banc) (similar). To the extent these decisions are inconsistent with today's opinion, we reject them.

intention." *Bentley,* 850 F.2d at 328.[6]

Defendants place the cart before the horse by arguing that accepting the judge's explanation would create an appearance of vindictiveness likely to chill the incentive to appeal convictions. The Supreme Court has ruled that unless vindictiveness (proven or reasonably presumed) underlies an enhanced sentence, any such "chilling effect" is without constitutional significance. *See Chaffin,* 412 U.S. at 29–35, 93 S.Ct. at 1984–1987. Moreover, the record in no way contradicts the thesis that there was an original sentencing plan. The judge's announcement of original sentencing intentions, though articulated after the fact, *see supra* note 6, bore all the hallmarks of plausibility. It finds support, for example, in the presentence investigation reports presented at the first sentencing hearing. We think it especially significant that these reports characterized the interdicted conduct as a unitary offense and set forth an evaluation not for each count, but rather for the "instant offense."

Nor is this a case where a disadvantage, not adequately explicable by reference to the judge's sentencing plan, has inured to defendants' detriment. Quite the contrary seems true: the arguments in favor of allowing the trial court to wield discretion are strongest where, as here, retrofitting does not serve to work a net increase in the accused's aggregate punishment. *See, e.g., Gray,* 852 F.2d at 138 ("resentencing will not be considered vindictive if the ultimate sentence for one or more counts does not exceed that given for all counts sentenced at the conclusion of the first trial") (footnote omitted); *Bentley,* 850 F.2d at 328; *United States v. Cataldo,* 832 F.2d 869, 874–75 (5th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1577, 99 L.Ed.2d 892 (1988); *United States v. Hagler,* 709 F.2d 578, 579 (9th Cir.), *cert. denied,* 464 U.S. 917, 104 S.Ct. 282, 78 L.Ed.2d 260 (1983); *Busic,* 639 F.2d at 951 n. 12; *cf. United States v. Norton,* 657 F.2d 1003, 1004 (8th Cir.1981) (per curiam) (total time decreased under second sentence).

Pupo's situation exemplifies the lack of cognizable prejudice. He faces the same incarcerative prospect after the resentencing (twelve years to serve on the affirmed count) as after the original sentencing (six years to serve on each of two counts, strung together consecutively). There has been no suggestion that his 12–year sentence exceeds the statutory maximum for the remaining count, or that retrofitting the sentence otherwise caused him some further detriment, say, postponing the likely date of parole or rendering good-time credits less attainable. In real-world terms, the sentence was not "enhanced" at all. Consequently, no reason existed to refrain from giving weight to the judge's explanation. The same generalizations apply to Pimienta–Redondo.

On this record, then, we have not the slightest reason to doubt the judge's explanation. The sentences imposed after remand were sufficiently within the integument of the district court's original sentencing plan that neither Pupo nor Pimienta–Redondo could have had any reasonable

---

6. At resentencing, the judge did allude to her original intentions. Regarding Pimienta–Redondo, she stated:

> Let me state, Mr. Redondo, to you that.... when I imposed the original sentence which was a total term of 10 years I thought of it long and hard, and I still think that was a fair sentence given your individual circumstances, your prior conviction, and [the] nature of the offense.
>
> Now, today, I have re-thought that. I have re-thought it also after your allocution given to me today, and I have left a term of 10 years. I have considered your circumstances, I have considered the nature of the offense and the aggravating circumstance that you in the past committed this same type of offense.

Regarding Pupo, the judge said at resentencing:

> And as in the case of Mr. Pimienta, I must express that I understand that the Court is not increasing the sentence, that the Court always intended this defendant for the offense committed to serve the period of years that I have imposed, that he has a prior conviction, and taking into account his individual background, his prior conviction, and the nature of this offense I believe on this single count this is a fair and a reasonable sentence.

Granted, it would have been preferable if the judge had articulated her sentencing plan earlier. Still, this omission was not constitutionally dispositive.

apprehension that harsher punishment was meted out in retaliation for claiming an appeal. Under the circumstances of this case, a presumption of vindictiveness is unwarranted.

A simple illustration highlights the practical value of this approach and strongly suggests why it must be correct. Assume that the district judge had originally concluded that Pupo should spend six years in jail for his part in this drug-related enterprise, and had sentenced him to six years' imprisonment on Count I and a term of probation on Count II. If the *Pearce* presumption applied, then Pupo would not spend a day behind bars after reversal of his Count I conviction.[7] Such a result can scarcely be said to mirror the judge's original sentencing intentions, to honor the societal interest in condign punishment, or to be a necessary concomitant to treating a defendant fairly. Neither the due process clause nor *Pearce* circumscribes the district court's sentencing discretion so severely, or mandates so bizarre an outcome, where the likelihood of actually vindictiveness is demonstrably small.

## III. DOUBLE JEOPARDY

■ The double jeopardy clause does not require a different result. In the past decade, the Supreme Court has largely allayed any double jeopardy concerns attendant to resentencing after appeal. *See Pennsylvania v. Goldhammer*, 474 U.S. 28, 30, 106 S.Ct. 353, 354, 88 L.Ed.2d 183 (1985) (per curiam) (resentencing after appeal does not intrude upon values protected by double jeopardy clause); *United States v. DiFrancesco*, 449 U.S. 117, 132–39, 101 S.Ct. 426, 434–39, 66 L.Ed.2d 328 (1980). Criminal sentences do not possess the constitutional finality and conclusiveness that attach to a jury's verdict of acquittal. *Id.* at 132, 101 S.Ct. at 434. Consequently, neither appellate review of sentences, *id.* at 136, 101 S.Ct. at 437, nor increases after appeal, *id.* at 137, 101 S.Ct. at 437, will ordinarily implicate double jeopardy considerations.

*Cf. Lockhart v. Nelson*, —— U.S. ——, 109 S.Ct. 285, 291, 102 L.Ed.2d 265 (1988) (double jeopardy clause did not bar retrial of sentence enhancement proceeding after evidence was erroneously admitted).

In this case, the district court did not subject defendants to double jeopardy by adjusting their sentences on Count II. A defendant "has no legitimate expectation of finality in the original sentence[s] when he has placed those sentences in issue by direct appeal and has not completed serving a valid sentence." *United States v. Andersson*, 813 F.2d 1450, 1461 (9th Cir. 1987) (footnote omitted). *Accord Colunga*, 812 F.2d at 198; *United States v. Crawford*, 769 F.2d 253, 257 (5th Cir.1985), *cert. denied*, 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986). The shoe fits comfortably here. Defendants, not having served the duration of the sentences previously imposed, attacked the bases on which those sentences rested by filing their original appeal. Their challenge necessitated review and redetermination of the full sentencing packages. We find ourselves in general agreement with the proposition that:

> Where the defendant challenges one of several interdependent sentences (or underlying convictions) he has, in effect, challenged the entire sentencing plan.... Consequently, he can have no legitimate expectation of finality in any discrete portion of the sentencing package after a partially successful appeal.

*Shue*, 825 F.2d at 1115 (citations omitted). *Accord Bentley*, 850 F.2d at 329; *Cataldo*, 832 F.2d at 875; *Hagler*, 709 F.2d at 579; *McClain v. United States*, 676 F.2d 915, 918 (2d Cir.), *cert. denied*, 459 U.S. 879, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982). So here: the double jeopardy clause did not foreclose resentencing on the affirmed count, within applicable statutory limits, to effectuate the trial court's original sentencing intentions.

---

**7.** It is no answer to suggest that district judges should guard against appellate disruption of sentencing packages by making all sentences run concurrently. The availability of consecutive, deferred, and/or suspended sentences, and their judicious use, have historically been important accoutrements of the district courts' broad sentencing authority.

## IV. CONCLUSION

We need go no further.[8] We believe that the district court resentenced appellants in accordance with law and without infringing upon their constitutional rights. Retrofitting defendants' sentences in the wake of their partially successful appeal to comport with the court's original sentencing plan was permissible. The judgments appealed from are, therefore,

*Affirmed.*

BREYER, Circuit Judge, with whom LEVIN H. CAMPBELL, Chief Judge joins (concurring).

My review of the presentence report convinces me that the court's original sentence rested upon the basic conduct at issue (possessing drugs with an intent to distribute them), and that it did not rest upon such technical matters as whether the "vessel" was "subject to the jurisdiction of the United States on the high seas" or was "within the customs waters of the United States" or both. That being so, I doubt that I would have remanded the case for resentencing initially. Regardless, since the basic conduct underlying both counts is the same, and since that basic conduct determined the sentence, it is virtually inconceivable that the similarity of old and new sentences could reflect "vindictiveness." I therefore agree with the court.

COFFIN and BOWNES, Circuit Judges (dissenting).

We accept, with appreciation, the court's concession that the test for this appeal is whether the circumstances of the district court's resentencing could instill in appellants a "reasonable apprehension of vindictiveness" on the part of the judge. *Longval v. Meachum*, 693 F.2d 236, 237 (1st Cir.1982).

We are perplexed, however, why the majority then proceeds to contradict directly the standard that it concedes is controlling. It states that "there must be some evidence

of actual, or at least apparent, vindictive motivation before a due process violation can be claimed." At 13–14. An "actual vindictiveness" requirement has been rejected by both the Supreme Court, *see, e.g., Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and by the First Circuit, *see Longval,* 693 F.2d 236 (1st Cir.1982); *United States v. Mazzaferro,* 865 F.2d 450, 457–58 (1st Cir.1989). Yet the majority's opinion is crafted on the assumption that actual vindictiveness must be shown.

The due process concerns underlying *Pearce* are no less prevalent in resentencing after an appeal than they are in resentencing after reconviction for offenses reversed on appeal. *See Robinson v. Scully,* 690 F.2d 21, 24 (2d Cir.1982). The Supreme Court has commented that a "judge who has been reversed, will have ... [a] personal stake in the prior conviction and ... [a] motivation to engage in self-vindication." *Chaffin v. Stynchcombe,* 412 U.S. 17, 26–27, 93 S.Ct. 1977, 1982–83, 36 L.Ed.2d 714 (1973).

The cases cited by the majority as evidence of a restrictive reading of *Pearce* do not modify this teaching one iota. In *Chaffin,* it was held permissible after a successful appeal for a *different* jury to give a higher sentence than the first jury because the second jury was not informed of the prior sentence. *Chaffin,* 412 U.S. at 35, 93 S.Ct. at 1986. Under such circumstances, there could be no *apprehension* of vindictiveness. This is to be contrasted with the instant case where the *same* judge increased the sentence for the same offense. Likewise in *Colten,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the imposition of a higher sentence after a *de novo* trial was held permissible in jurisdictions that employ a two-tier system of trial courts because here also there were two *different* courts involved in the sentencing, an inferior court and a superior court. *Wasman,* 468 U.S. 559, 104 S.Ct. 3217, is the only case cited by the majority in which a great-

---

**8.** We note that, for federal crimes committed after November 1, 1987, the Sentencing Reform Act requires district judges to explain their sentencing decisions in some detail. 18 U.S.C. § 3553(c) (Supp.1986); *see also United States v.*

*Golomb,* 754 F.2d 86, 90–91 (2d Cir.1985), *opinion after remand,* 811 F.2d 787 (2d Cir.1987). Thus, the existence *vel non* of an original sentencing plan should henceforth be open to question only on rare occasions.

er sentence imposed by the *same* judge on retrial was upheld. The Supreme Court permitted this enhancement only because of an intervening conviction of the defendant for another crime, holding that after retrial and conviction following a defendant's successful appeal, a sentencing authority may justify an increased sentence by affirmatively identifying relevant *conduct* or *events* that occurred *subsequent* to the original sentencing proceedings. It is not disputed that no such additional conduct or events has occurred in the instant case.[1]

In this case we cannot escape the conclusion that at least the potential for a reasonable apprehension of vindictiveness existed in the circumstances of the case at bar where the defendants were resentenced by the same judge who originally imposed sentence after their convictions were partially reversed on appeal due to an error in that judge's instructions to the jury.

*Pearce* requires that we presume that the district judge increased the defendants' sentences on count II in violation of their due process rights *unless* it is apparent from the record that the increased sentences were "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081.

In resentencing Pimienta Redondo and Pupo, the district court did not rely upon any conduct on the part of the defendants occurring after the original sentencing procedure. App. at 15–16, 27. Rather, the court simply stated that the total period of incarceration imposed on each defendant for Count II was the same that it had

originally intended to impose for the offenses committed.

Whether or not we would accept the word of a trusted and respected colleague is quite beside the point, for we are dealing with defendants' reasonable fear of vindictiveness. Therefore we must distance ourselves from our own knowledge of the judge and view from a more remote point, and even with a jaundiced eye, post hoc explanations without record corroboration.

Some courts have held that where it is *clear* that a sentencing judge has increased a defendant's sentence to comport with initial sentencing intentions, there is no presumption of vindictiveness. *See United States v. Guevremont*, 829 F.2d 423, 427 (3d Cir.1987); *United States v. Colunga*, 812 F.2d 196, 200 (5th Cir.1987); *see also United States v. Jefferson*, 714 F.2d 689, 707 n. 34 (7th Cir.1983) (appellate court has power to vacate entire sentence and remand to allow judge to carry out clear intentions of a sentencing package). This is not such a case. There is nothing in the record that would allow us to determine the sentencing judge's intentions when the defendants were first sentenced.[2]

The record before us shows that the district court viewed counts I and II as two separate offenses. The court instructed the jury to view them as such, and the court imposed separate sentences for each offense, to run consecutively. From the government's urgings at trial concerning the separate nature of the two counts and our prior decision in *Christensen*, *see* majority opinion at n. 2, *supra*, the district court was in all probability persuaded to view 21 U.S.C. § 955a(a) (Count I) as an offense involving any person on any vessel that the U.S. lawfully is able to seize and 21 U.S.C. § 955a(c) (Count II) as an offense involving vessels in U.S. customs waters.[3]

---

1. *Bordenkircher*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), and *Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), are also inapposite because they involved *pretrial* decisions. The Court has expressly distinguished between the pretrial and post-trial setting. *Id.* at 381, 102 S.Ct. at 2492.

2. The record reveals only that the defendants were sentenced before the district judge in chambers. There is no sentencing transcript. Rather, "minutes" of the sentencing were entered on a form. Record at 194, 202. There is no indication that the sentencing judge viewed counts I and II as a single offense deserving of a cumulative sentence of ten years for Pimienta Redondo and twelve years for Pupo.

3. The government asked the court to instruct the jury that count I charged an offense involving "any person on board any vessel in the high seas" possessing a controlled substance and in-

In these circumstances, the defendants, having successfully appealed their convictions on one count, reasonably could expect the sentence under the remaining count to stay the same.

The court majority, under the ground rules we have adopted—reasonable apprehension of vindictiveness—is compelled to say that such an expectation is unreasonable. This might be true in a case where one count was obviously the tail and the other the dog. But the case at bar stands at least in a gray area where a defendant could reasonably believe that the court had made an independent sentence assessment for each count.

To talk, as the court does, about the sentencing court crafting "a disposition in which the sentences on the various counts form part of an overall plan" is really to say that the only stable factor in the "plan" is the bottom line, the total sentence to be served. The components can drop out of the picture, the "plan" can be radically reshaped, but the bottom line is sacrosanct.

The concept of permitting the "retrofitting" or rewriting of such a malleable, crafted overall plan is, we think, demeaning. Moreover, it is totally unnecessary to resort to such a fiction. The issue is not one that must be resolved by circumscribing what a defendant may reasonably apprehend. We realize that sentencing under the new guidelines may effectively moot such questions. But even apart from them, a court can easily avoid the troubling due process problems we face here by either (1) making clear at initial sentencing that each count would independently merit the total sentence given or (2) impose sentences to run concurrently on each count. *Cf. McClain v. United States,* 676 F.2d 915, 918 (2d Cir.1982) (remand for resentencing on one count of two count conviction after only one count is vacated is not unconstitutional when statute required sentencing judge initially to impose consecutive sentences); *United States v. Diaz,* 834 F.2d 287 (2d Cir.1987).

We do not think we would be faithful to the mandate of *Pearce* if we presumed an absence of vindictiveness in resentencing merely because, upon resentencing the defendants, the district court indicated that its original unstated intentions remained the same. *But see United States v. Hagler,* 709 F.2d 578, 579 (9th Cir.1983); *United States v. Shue,* 825 F.2d 1111, 1116 (7th Cir.1987). Were such an easy, open-ended, and unreviewable means of preserving the length of a cumulative period of incarceration readily available to sentencing judges, there would loom over the resentencing process an appearance of vindictiveness that would likely chill defendants' incentives to appeal their convictions. True, here the total sentence remained the same. Defendants, therefore, are not chilled in the sense of fearing an increase in their sentences if they lose their appeals. But a defendant, appealing his convictions on two counts, faces one chance of overturning both, one chance of overturning one conviction, and one of losing on both; to say that his only chance of improving his situation is to win on both counts, is to lessen considerably the odds. This, we think, is chilling to a putative appellant. To avoid the apprehension of vindictiveness and, concomitantly, defendants' apprehensions that their appeals will be futile, *Pearce* directs us to adopt a presumption in favor of the defendants, not the sentencing judge.

Had the majority adopted a presumption for this type of situation and then proceeded to find that it had been rebutted here, we of course would be troubled given the absence of objective evidence indicating the judge's original intentions. But at least this approach—apparently adopted by our brother Breyer in his concurrence—would have the benefit of limiting the damage. By refusing to adopt a presumption and requiring defendants to produce a smoking gun before recognizing the existence of the presumption, the majority has effectively foreclosed any possibility of defendants

---

tending to distribute it, and the government asked the court to explain that count II "is possession with intent to distribute a controlled

substance, aboard any vessel within the customs waters of the United States." Record at 170 (Government's Requested Instruction No. 16).

**20**

prevailing in this setting, thereby insulating, forever and completely, the actions of trial judges who, like everyone else, cannot help but fall prey on occasion to the basic human instinct of self-vindication.

For the above reasons we would vacate the increases in the defendants' sentences on count II as violative of the defendants' rights to due process of law.