# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00758-COA

**TONY HARPER**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                           **APPELLEE**

DATE OF JUDGMENT:              05/11/2022
TRIAL JUDGE:                   HON. WINSTON L. KIDD
COURT FROM WHICH APPEALED:     HINDS COUNTY CIRCUIT COURT,
                               FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:        OFFICE OF STATE PUBLIC DEFENDER
                               BY: W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY:             JODY EDWARD OWENS II
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED IN PART; REVERSED AND
                               RENDERED IN PART; REMANDED -
                               03/11/2025
MOTION FOR REHEARING FILED:

**EN BANC.**

**EMFINGER, J., FOR THE COURT:**

¶1.     Tony Harper was indicted in Hinds County, Mississippi, and charged with three counts of culpable negligence manslaughter and one count of felony fleeing from law enforcement. He was tried and convicted of all four counts in the indictment. Harper appeals only his conviction for felony fleeing law enforcement.[1]

## FACTS AND PROCEDURAL HISTORY

---

[1] Harper does not challenge his convictions of culpable negligence manslaughter, and we do not disturb them.

¶2.    On January 13, 2017, the Hinds County Sheriff's Department set up an administrative checkpoint in an area where people reported drag racing. Sheriff's Deputy Jonathan Smith, who later became a Mississippi Highway Patrol trooper, testified that a blue truck approached the checkpoint and did not obey the deputies' orders to stop. Smith shined his flashlight into the truck as it passed by and was able to identify the driver. Instead of stopping at the checkpoint, the driver accelerated past the deputies manning the checkpoint, almost striking one of them. Smith got into his vehicle, turned on his blue lights and siren, and began a nearly four-mile pursuit. Smith estimated that during this time, the blue truck reached speeds of more than eighty miles per hour (mph) in a thirty-five mph zone. Smith also witnessed the truck driving on the wrong side of the road and driving erratically. After seeing the truck become airborne, Smith immediately used his radio and called off the pursuit. Smith also testified that he turned off his blue lights and sirens at this time. Smith, along with several other deputies who had been assisting with the pursuit, met in a nearby Walgreens parking lot. The deputies talked for several minutes about the incident, and then they all got back into their vehicles to return to the original checkpoint area. On their way back, the deputies came upon blue lights and a traffic accident involving a blue Chevrolet Silverado and a silver Pontiac Grand Prix. Smith identified one of the wrecked vehicles as the blue truck involved in the earlier pursuit.

¶3.    Mississippi Highway Patrol Officer Vincent Hughes testified that on the date of the accident, he was employed by the Jackson Police Department as a patrolman. He was patrolling the area of a funeral home when he was flagged down by the funeral director and

2

others. They told Hughes a big wreck had just occurred down the road. Hughes was the first person to arrive at the accident scene where a truck and car had collided. He identified the vehicles as a Chevrolet Silverado and a Pontiac Grand Prix. The male driver of the Grand Prix was hanging out of the passenger side door, unresponsive. Two female occupants from the Grand Prix were lying unresponsive outside of the vehicle. The driver of the blue truck was hanging out of the driver's side door, and a passenger from the truck took off running. At that point, Hughes called for an ambulance and extra police units. Hughes testified that the passenger who ran from the truck was later apprehended near the scene of the accident. The passenger told officers that Harper drove through the checkpoint, took off, and would not stop. Hughes also identified Harper as the driver of the truck.

¶4.     Jackson Police Officer Michael X. Outland Sr., testified at trial as an expert in the field of accident reconstruction. Outland was called to the scene of the accident, and he gathered the evidence needed to determine how the accident occurred. Outland testified that based upon his investigation, Harper was traveling at a speed of ninety-four mph with his lights off when he struck the Grand Prix driven by Virgil Kyles. The Grand Prix was hit at the junction of the driver's side front and back doors while Kyles was making a left turn across Harper's lane of travel.

¶5.     Dr. Mark LeVaughn with the State Medical Examiner's Office testified as an expert in the field of forensic pathology. He conducted post-mortem examinations on the bodies of Kyles and his passengers, Rose Coleman and Carolyn Conerly. Dr. LeVaughn testified that all three people died from the injuries they suffered as a result of the motor vehicle accident.

3

¶6.     Harper was initially arrested on January 17, 2017, and charged with three counts of second-degree murder. A Hinds County grand jury returned an indictment on April 17, 2017, which charged Harper with three counts of culpable negligence manslaughter. Harper was later re-indicted by a Hinds County grand jury and charged with three counts of culpable negligence manslaughter and one count of felony fleeing law enforcement by an indictment filed on October 25, 2019.

¶7.     On May 13, 2020, Harper moved to dismiss the felony fleeing charge, arguing that the prosecution for that offense was not commenced within two years of the crime and that the prosecution was barred by the two-year statute of limitations.[2] The record is unclear, but at some point prior to trial, the motion was denied. However, a written order was never entered. Harper's trial began on March 28, 2022. Because no written order was entered, his new defense counsel brought the motion back before the court for a ruling. A discussion between the State, the defense, and the trial judge appears in the record showing the State argued that the motion had already been denied. The case proceeded to trial. At the close of the State's case-in-chief, the defense moved for a directed verdict as to felony fleeing again because the prosecution did not start within two years of the date of the offense. The trial court denied the motion, and Harper was convicted of all four counts in the indictment. For each of the three convictions of culpable negligence manslaughter, Harper was sentenced to three concurrent terms of twenty years in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended and fifteen years to serve. For his conviction of felony

---

[2] *See* Miss. Code Ann. § 99-1-5 (Rev. 2020).

4

fleeing law enforcement, he was sentenced to serve five years in MDOC's custody consecutively to the other three sentences. Harper filed a motion for judgment notwithstanding the verdict (JNOV) alleging once again that the prosecution for felony fleeing was barred by the two-year statute of limitations. The trial court denied the motion by an order entered on June 30, 2022. Harper appeals with the sole argument that his prosecution for felony fleeing law enforcement was not commenced within two years of the date of the offense and is therefore barred by the statute of limitations.

## STANDARD OF REVIEW

¶8.     In *Murshid v. State*, So. 3d 489, 498 (¶26) (Miss. Ct. App. 2021), this Court stated:

> "Because 'statutes of limitations are questions of law, we employ a de novo standard of review with this issue.'" *Stevens v. State*, 294 So. 3d 699, 704 (¶16) (Miss. Ct. App. 2020) (quoting *Smoot v. State*, 780 So. 2d 660, 662 (¶6) (Miss. Ct. App. 2001)).

## ANALYSIS

¶9.     The Legislature provided in Mississippi Code Annotated section 99-1-5 that the "passage of time shall never bar prosecution against any person" for a number of criminal offenses specifically set forth in that section. Felony fleeing law enforcement under Mississippi Code Annotated section 97-9-72(2) (Rev. 2020) is not one of the specifically enumerated offenses. Further, in section 99-1-5, the statute commands:

> A person **shall not be prosecuted** for any other offense not listed in this section unless the prosecution for the offense is **commenced** within two (2) years after the commission thereof.

(Emphasis added). In Mississippi Code Annotated section 99-1-7 (Rev. 2020), the law states:

> A prosecution may be commenced, within the meaning of Section 99-1-5 by

5

the issuance of a warrant, or by binding over or recognizing the offender to compel his appearance to answer the offense, as well as by indictment or affidavit.

This procedure is in line with Mississippi Rule of Criminal Procedure Rule 2.1, which provides in part:

> (a) Commencement. All criminal proceedings shall be commenced either by charging affidavit, indictment, or bill of information.
>
> (b) Docketing the Case.
>
>> (1) Charging affidavit. Anyone bringing a criminal charge in municipal court or justice court shall lodge a charging affidavit with the judge or clerk of the court. The clerk of the court shall record all charging affidavits on the docket.

¶10.    The State contends that the prosecution for felony fleeing was commenced by affidavits filed in Jackson Municipal Court on January 17, 2017. The three criminal affidavits included language that Harper:

> did . . . in commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any individual, kill and murder Rose Coleman, a human being, by engaging in a vehicle pursuit with law enforcement officials that ended in a vehicle collision which resulted in the death of Rose Coleman, in violation of Mississippi Code Section 97-3-19(1)[(b)].

Clearly, this affidavit sought to charge Harper with second-degree murder. The other two criminal affidavits included identical language and sought to charge Harper with second-degree murder for the deaths of Virgil Kyles and Carolyn Conerly. The affidavits did not seek to charge Harper with felony fleeing law enforcement in violation of section 97-9-72(2).

¶11.    An "Underlying Facts and Circumstances Sheet for Arrest Warrant" was filed with the criminal affidavits to support the officer's request for the issuance of an arrest warrant

6

for second-degree murder. This underlying facts sheet included statements that Harper

> was the operator of a motor vehicle that attempted to flee and elude Law Enforcement Officials . . . did willingly operate his motor vehicle in a manner to show extreme indifference to human life and property in an attempt to feloniously flee and elude Law Enforcement Officials. . . .

However, the underlying facts sheet concluded with the following statement:

> Based upon the above, this Investigator believes that probable cause exists to charge the suspect, Tony Harper, with three (3) counts of Second Degree Murder for the deaths of Virgil Kyles, Rose Coleman, and Carolyn Conerly, and requests that a warrant for the arrest of Tony Harper be issued for Second Degree Murder.

Once again, the underlying facts sheet did not request that Harper be charged with felony fleeing law enforcement.

¶12. Apparently, Harper was arrested and charged with three counts of second-degree murder and had an initial appearance on those charges. However, as noted above, the Hinds County grand jury returned an indictment that was entered on April 17, 2017, charging Harper with three counts of culpable negligence manslaughter, rather than second-degree murder. Harper was not charged with felony fleeing in this indictment.

¶13. The Hinds County grand jury returned a second indictment, entered on October 25, 2019, charging Harper with the same three counts of culpable negligence manslaughter, but, for the first time, charged Harper with felony fleeing. A capias was issued for Harper's arrest on this new indictment on October 28, 2019, and was served on Harper on November 1, 2019.

¶14. The crime of felony fleeing law enforcement occurred on January 13, 2017. The State's first effort to charge Harper with felony fleeing was the indictment filed on October

25, 2019. We find that Harper's prosecution for the offense of felony fleeing was not commenced within two years of the date of the offense as required by section 99-1-5 and is therefore barred by the statute of limitations. Accordingly, we reverse and render Harper's conviction as to felony fleeing law enforcement as charged in Count IV.

¶15. At trial, as noted above, Harper was also convicted of culpable negligence manslaughter in Counts I, II, and III of the indictment. *See supra*, note 1. He was sentenced to three concurrent terms of twenty years in the custody of the MDOC, with five years suspended and fifteen years to serve. Regarding the sentencing in cases where a defendant is sentenced on more than one count of a multi-count indictment and one of the convictions is reversed and rendered on appeal, this Court held in *O'Kelly v. State*, 267 So. 3d 282, 296-97 (¶57) (Miss. Ct. App. 2018):

> "[W]hen a defendant is convicted of more than one count of a multicount indictment, the [circuit] court is likely to fashion a sentencing package in which sentences on individual counts are interdependent." *Sallie v. State*, 237 So. 3d 749, 756-57 (¶29) (Miss. 2018) (quoting *United States v. Shue*, 825 F.2d 1111, 1114 (7th Cir. 1987)). "[B]ecause the sentences are interdependent, reversal of convictions underlying some, but not all, of the sentences renders the sentencing package ineffective in carrying out the [circuit] court's sentencing intent as to any one of the sentences on the affirmed convictions." *Id*. at 757 (¶29) (quoting *Shue*, 825 F. 2d at 1114)." "'[A]fter an appellate court unwraps' the original sentencing package by removing 'one or more charges from its confines, . . . common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan,' and be allowed 'to reconstruct the sentencing architecture upon remand, within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal.'" *Id*. at 756 (¶28) (quoting *United States v. Pimienta-Redondo*, 874 F.2d 9 (1st Cir. 1989)).

Based on the above, we also remand this cause to the circuit court for consideration of resentencing on the convictions of culpable negligence manslaughter in Counts I, II, and III

of the indictment.

¶16. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McCARTY, WEDDLE AND ST. PÉ, JJ., CONCUR. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND LAWRENCE, JJ.**

**WESTBROOKS, J., DISSENTING:**

¶17. Because I find that the affidavits and the accompanying underlying-facts-and-circumstances sheet effectively commenced the prosecution for the felony fleeing charge, I respectfully dissent. The majority seems to focus on the fact that the affidavit and the underlying facts-and-circumstances sheet did not specifically request that Harper be charged with felony fleeing. However, the crime of felony fleeing was plainly articulated in all the charging documents that were filed before the two-year statute of limitations. To find that the prosecution had not commenced simply because felony fleeing was not specifically listed ignores the plain language of Mississippi Code Annotated section 99-1-7 (Rev. 2020), and our rules of law. Accordingly, I respectfully dissent.

¶18. Section 99-1-7 provides: "A prosecution may be commenced . . . by the issuance of a warrant, or by binding over or recognizing the offender to compel his appearance to answer the offense, as well as by indictment or affidavit." Miss. Code Ann. § 99-1-7; *see also* MRCrP 2.1(a) ("All criminal proceedings shall be commenced either by charging affidavit, indictment, or bill of information."). It is important to note the statute does not require that each charge be specifically listed, and the majority provides no authority to support this notion. Furthermore, I find that the phrase "binding over or recognizing the offender to

compel his appearance to answer the offense" applies to the circumstances of this case. Although the indictment was not filed until two years after the offense, all the charging instruments filed prior to the two-year statutory limitations period effectively put Harper on notice and compelled him to answer to *every* offense that he committed on the day in question.

¶19. Three criminal affidavits and an accompanying underlying facts-and-circumstances sheet detailed the crimes Harper committed. In the underlying facts-and-circumstances sheet, Investigator Williams confirmed that "Tony Harper . . . was the operator of a motor vehicle that *attempted to flee and elude Law Enforcement Officials*." (Emphasis added). She further explained that "the suspect did knowingly and willingly operate his motor vehicle in a manner as to show extreme indifference to human life and property in an attempt to *feloniously flee and elude Law Enforcement Officials*." (Emphasis added). In all three affidavits, Investigator Williams charged that Harper was engaged in a "*vehicle pursuit with law enforcement officials* that ended in a vehicle collision which ended in the death of" Virgil Kyles, Rose Coleman, and Carolyn Conerly. (Emphasis added).

¶20. Additionally, Harper was fully aware that he had to "answer to the offense" because he admitted under oath that he committed the crime of felony fleeing. After Harper was released from the hospital, he was interviewed about the day in question. He admitted to driving through the checkpoint because he was intoxicated and had drugs in his vehicle. He admitted to leading the police on a high-speed chase that spanned several streets. He also testified at trial and admitted to fleeing the police:

10

Q. Now let's go back to the beginning when you evaded the checkpoint initially, okay, and you said you drove off. How fast were you going?

A. I was going about 65 or 70.

Q. Why were you going so fast?

A. I was trying to get away from the law enforcement.

Q. Did you know[] what [the] speed limit was in that area?

A. Like 35 – I mean about 45.

Q. Okay. So your main goal no matter what was just to evade the officers at that point?

A. Yes, but they were steady pursuing me[.]

Harper knew that he would be subject to prosecution for felony fleeing. He admitted to the offense before the prosecution commenced and maintained his culpability at all stages after it was commenced. It is inequitable to allow Harper to now escape accountability for a crime for which he knew he would have to answer.

¶21. I find that the affidavits and underlying facts-and-circumstances sheet clearly recognized Harper "to compel his appearance to answer the offense." These documents described all the charges that Harper committed, thereby commencing the prosecution and tolling the statute of limitations. Allowing Harper to escape conviction for an admitted offense simply because the words "Felony Fleeing Law Enforcement" were not specifically listed does not comport with our statute and rules of law. The trial court properly denied Harper's motion for judgment notwithstanding the verdict. Therefore, I respectfully dissent.

**McDONALD AND LAWRENCE, JJ., JOIN THIS OPINION**.

11