GORDON McCLOUD, J. (dissenting)
*972 ¶36 The majority accurately recites the rules about the presumption of vindictiveness that arises when a postappeal sentence for a crime exceeds the preappeal sentence for that crime. But it applies those rules incorrectly. It errs by failing to recognize that at sentencing hearings in Washington, judges can consider only the facts of the crime of conviction-not the facts of other acquitted conduct, dismissed charges, or reversed convictions. This is "offense specific" sentencing as mandated by the state legislature. Since the legislature has *297 mandated such offense specific sentencing, it necessarily follows that the only offense conduct that can be considered in comparing the length of a preappeal sentence for a crime to the length of the postappeal sentence for the exact same crime is the conduct specific to that crime-not the conduct specific to other dismissed or acquitted crimes.
¶37 The majority makes a different comparison; it compares the preappeal sentence for seven crimes to the postappeal sentence for just three of those crimes, even though convictions for four of the seven crimes were reversed. That flawed comparison leads the majority to approve postappeal sentences on the three remaining convictions that far exceed the sentences originally imposed on those same convictions, despite the absence of any new postappeal evidence to justify them.
¶38 I therefore respectfully dissent.
FACTUAL AND PROCEDURAL HISTORY
¶39 A jury found Ronald Richard Brown guilty of two counts of first degree kidnapping, two counts of first degree robbery, two counts of second degree assault, and one count of first degree burglary in 2013. Clerk's Papers (CP) at 89 (initial judgment and sentence). The superior court imposed a standard-range sentence on each of those seven counts. Id. at 91, 93. It explicitly declined to impose an exceptional sentence above the standard range on any count under RCW 9.94A.535(2)(c) (permitting use of high offender score as aggravating factor in certain circumstances). See id. at 116-18 (State's initial sentencing memorandum); Verbatim Report of Proceedings (June 21, 2016) (VRP) at 33-34.
¶40 Brown appealed. In 2015, the Court of Appeals reversed four of the seven convictions. State v. Brown, No. 70148-7-1, slip op. at 12-17, 2015 WL 4513877 (Wash. Ct. App. July 27, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/701487.pdf. That court ruled that an error in the jury instructions for the kidnapping charges violated Brown's article I, section *298 22 and Sixth Amendment rights to notice of the charged crimes. Id. at 7-9 ; WASH. CONST. art. I, § 22 ; U.S. CONST. amend. VI. It also held that convicting and sentencing Brown for both assault and robbery (of each of the two victims) violated his article I, section 9 and Fifth Amendment rights. Brown, slip op. at 12-17 ; WASH. CONST. art. I, § 9 ; U.S. CONST. amend. V. In other words, it reversed four of Brown's convictions due to constitutional error.
¶41 On remand, the State declined to try Brown again on the kidnapping charges, even though those charges carried the highest seriousness level under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. VRP at 3-4; CP at 91 (initial judgment and sentence). See generally RCW 9.94A.515 (ascribing seriousness levels to offenses). Instead, it moved to dismiss those charges without prejudice, and the superior court granted that motion. VRP at 4-5; CP at 26 (motion), 25 (order).
¶42 Thus, at Brown's resentencing in 2016, only three convictions remained. The offender scores for each of the three convictions decreased from 19 at the first sentencing hearing to 11 at resentencing.[1] Compare CP at 91 (initial judgment and sentence), with id. at 9 (judgment and sentence on remand).
*973 And at the resentencing hearing, the State presented no new facts. VRP at 19-27.
¶43 Nevertheless, the State argued that the court should impose the same total period of confinement that it had previously imposed because that period of confinement "adequately represented the facts in this case." Id. at 21-22; see also CP at 32-36 (State's amended sentencing memorandum on remand). But because that total period of confinement was greater than the top of the standard ranges for the three remaining convictions, the State sought exceptional *299 sentences above the range-something it had not done at the first sentencing hearing.
¶44 The State did not focus on Brown's individual offenses when it made this argument about "the facts of this case." CP at 32-36. Rather, the State focused on reaching a predetermined total period of confinement for all of the three remaining convictions. Id. It offered the court multiple ways to impose a total period of confinement equivalent to the one that Brown had originally received, id. at 34, thus indicating that it believed "the facts of this case" included the facts of the seven original crimes.
¶45 Specifically, when the State did discuss specific facts to be considered at resentencing, it did not limit its discussion to the conduct underlying the remaining robbery and burglary convictions. It also relied on conduct underlying the reversed-and consequently unproven-kidnapping counts. For example, in arguing for the same total period of confinement, the State asserted that Brown was "the one who's responsible in this case for the fact that [the alleged kidnapping victims] had to endure the hours of confinement and the hours of fear and anxiety on the night in question and following." VRP at 25.
¶46 Brown argued against exceptional sentences. He explained that "there have been no new facts or identifiable conduct by the defendant, besides succeeding on appeal, that this court or the State could use to justify an exceptional sentence." CP at 29 (Brown's sentencing memorandum on remand).
¶47 The superior court declined to impose the same total period of confinement. But it did grant the State's request for exceptional sentences above the standard range. Id. at 21-22 (findings of fact and conclusions of law). The court concluded that the sentencing range resulting from Brown's number of convictions together with his criminal history did not adequately reflect his criminality, and, hence, it found "substantial and compelling reasons" to depart from the standard range for each conviction. Id. ;
*300 RCW 9.94A.535(2)(c). As a result, Brown's sentences for the two robbery convictions increased from 231 months to 279 months, and his sentence for the burglary conviction increased from 176 months to 204 months. Compare CP at 93 (initial judgment and sentence), with id. at 11 (judgment and sentence after remand).
¶48 Brown appealed the sentences. The Court of Appeals affirmed. State v. Brown , No. 75458-1-1, 2018 WL 1275932 (Wash. Ct. App. Mar. 12, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/754581.pdf. This court granted review. State v. Brown , 190 Wash.2d 1025, 421 P.3d 460 (2018).
DISCUSSION
Judicial Vindictiveness Presumptively Infected Brown's Resentencing-and the State Has Not Rebutted That Presumption
¶49 A court violates a defendant's right to due process under the Fourteenth Amendment when it imposes a "penalty upon the defendant for having successfully pursued a statutory right of appeal." North Carolina v. Pearce, 395 U.S. 711, 724, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794, 798-99, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) ; U.S. CONST. amend. XIV. Because "[t]he existence of a retaliatory motivation would, of course, be extremely difficult to prove in any individual case," Pearce, 395 U.S. at 725 n.20, 89 S.Ct. 2072, a presumption of judicial vindictiveness applies when "there is a 'reasonable likelihood' that [an] increase in [the] sentence is the product of actual vindictiveness on the part of the sentencing authority." Smith, 490 U.S. at 799, 109 S.Ct. 2201 (quoting United States v. Goodwin, 457 U.S. 368, 373, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) ). When the record allows, however, the State may rebut that presumption.
*974 Texas v. McCullough, 475 U.S. 134, 140, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986).
*301 ¶50 Here, there is a reasonable likelihood that Brown's increased sentences were a response to-and therefore a penalty for-his success on appeal. Consequently, the presumption of judicial vindictiveness applies. And the State has not rebutted that presumption.
A. Brown Got Longer Sentences on His Convictions after His Successful Appeal
¶51 The first step in this analysis is to determine whether the postappeal sentences were really longer than the preappeal sentences. To do that, we look to Washington sentencing law.
¶52 Our state legislature requires offense-specific sentencing. See ch. 9.94A RCW; WASH. STATE CASELOAD FORECAST COUNCIL, 2017 WASHINGTON STATE ADULT SENTENCING GUIDELINES MANUAL 63, https://www.cfc.wa.gov/PublicationSentencing/SentencingManual/Adult_Sentencing_Manual_2017.pdf [https://perma.cc/78SQ-AK9G] ("For multiple current offenses, separate sentence calculations are necessary for each offense because the law requires that each receive a separate sentence."). In furtherance of that policy decision, Washington's SRA requires trial courts to consider only "real facts" of the crimes of conviction at sentencing. RCW 9.94A.530(2) ; State v. Houf, 120 Wash.2d 327, 332-34, 841 P.2d 42 (1992). In this respect, Washington's SRA differs from the federal sentencing guidelines, which permit consideration of other factors, including acquitted conduct. 18 U.S.C. § 3661 ; United States v. Watts, 519 U.S. 148, 151-54, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (per curiam).
¶53 "Real facts" are those that the State has proved or that the defendant has affirmatively admitted. RCW 9.94A.530(2) ; State v. Hunley, 175 Wash.2d 901, 287 P.3d 584 (2012) (holding that a defendant's silence does not relieve the State of its burden of proving sentence-enhancing facts). "The 'real facts' or 'established facts' concept excludes consideration of either uncharged crimes or of crimes that were charged but later dismissed."
*302 State v. McAlpin, 108 Wash.2d 458, 466, 740 P.2d 824 (1987) (collecting cases). Conduct that has "not resulted in convictions ... may not be considered at all." Id. at 467, 740 P.2d 824. Thus, the SRA precludes a sentencing court from considering reversed convictions when it imposes a sentence because reversed convictions are not convictions. See Pearce, 395 U.S. at 721, 89 S.Ct. 2072 (observing that overturning a conviction results in "the slate [being] wiped clean").
¶54 The four reversed convictions in this case fall outside the definition of "real facts." Those convictions were not just "wiped clean"; they were reversed due to unconstitutionality. Under United States Supreme Court precedent, a sentencing court cannot consider an unconstitutionally obtained conviction for any purpose.[2] In other words, under controlling law, Brown's sentences for his three remaining convictions could be based on only those three convictions. It is indisputable that the superior court imposed longer sentences on each of these three convictions after Brown's successful appeal than it did before.
B. Because Brown's Three Sentences Were Longer after Appeal Than They Were Before, Pearce's Holding-That a Presumption of Judicial Vindictiveness Arises When the Same Sentencing Court Increases a Sentence after Appeal without Any New Factual Basis-Applies in This Case
¶55 Pearce makes clear that a presumption of judicial vindictiveness applies when, as here, postappeal sentences exceed preappeal sentences. Pearce also makes clear that such vindictiveness violates the defendant's right to due process under the Fourteenth Amendment.
¶56 Pearce was convicted of assault with intent to commit rape and sentenced to 12 to 15 years in prison.
*303 395 U.S. at 713, 89 S.Ct. 2072. His conviction was later reversed by a *975 state appellate court, and the State decided to retry him. Id. Pearce was convicted again, and the court imposed an 8-year prison sentence. Id. But "when added to the time Pearce had already spent in prison, the parties agree[d the new sentence] amounted to a longer total sentence than that originally imposed." Id.
¶57 The United States Supreme Court viewed the second sentence as a "more severe punishment," despite its facial appearance of leniency. Id. at 716, 89 S.Ct. 2072. Yet the sentencing court's reasons, if any, for imposing the increased sentence were "not so dramatically clear." Id. at 726, 89 S.Ct. 2072. And "the State [had not] offered any reason or justification for that sentence beyond the naked power to impose it." Id. The Court therefore presumed that the sentencing court had imposed the "heavier sentence" in response to the defendant's "having succeeded in getting his original conviction set aside." Id. at 723-24, 89 S.Ct. 2072.
¶58 That presumptively vindictive response violated the defendant's right to due process. "Due process of law ... requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." Id. at 725, 89 S.Ct. 2072. The Supreme Court therefore affirmed the grant of the writ of habeas corpus, holding that Pearce could not be imprisoned under the unconstitutional sentence. Id.
¶59 The Court also made clear, however, that an increased sentence will not always violate the defendant's right to due process. It stated, "A trial judge is not constitutionally precluded ... from imposing a new sentence, whether greater or less than the original sentence., in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities,' " which are all permissible sentencing factors in the federal system. Id. at 723, 89 S.Ct. 2072 (quoting *304 Williams v. New York, 337 U.S. 241, 245, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) ).[3] The Court noted that "[s]uch information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources." Id. Thus, new information could justify a sentence increase, but when no new information exists, a presumption of judicial vindictiveness arises.
¶60 No relevant new information about Brown or his crimes was presented at his resentencing, though it certainly could have been.[4] The presumption of judicial vindictiveness therefore applies in this case.
¶61 The majority holds to the contrary because it concludes that Brown's sentences were not really increased. The majority reaches that conclusion by comparing Brown's new total period of confinement to his initial total period of confinement. Majority at 969-70.
¶62 But that is not the correct comparison to make in Washington. Instead, as discussed in Part A above, Washington courts must impose a specific sentence for each specific offense of conviction based on "real facts" proved (or admitted) about that specific offense. Thus, as a matter of state law, Brown's punishment did increase because the comparison runs from a given conviction's initial sentence to the same conviction's new sentence. And because the punishment increased under state law, federal law requires that we presume that vindictiveness motivated the harsher punishment, unless the sentencing court relied on new information to justify the harsher punishment.
*305 ¶63 The majority follows federal circuit courts of appeals that compare the "total aggregate" of prison time imposed at the two *976 sentencing hearings. Majority at 969. But those decisions are inapt because they are based on a fundamentally different sentencing scheme-one in which the sentencing court may consider uncharged conduct, e.g., UNITED STATES SENTENCING COMMISSION GUIDELINES MANUAL 2018 § 1B1.3(a), http://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2018/GLMFull.pdf [https://perma.cc/V43L-MQP6] as well as acquittals and reversed convictions. See Watts, 519 U.S. at 151-54, 117 S.Ct. 633. Under that sentencing scheme, federal courts consider sentences a package penalty for the crimes of conviction. See United States v. Pimienta-Redondo, 874 F.2d 9, 14 (1st Cir. 1989) ; United States v. Gray, 852 F.2d 136, 138 (4th Cir. 1988) ; United States v. Shue, 825 F.2d 1111, 1114-15 (7th Cir. 1987) ; United States v. Bay, 820 F.2d 1511, 1513-14 (9th Cir. 1987). Contrary to the federal model, where the "factors underlying the original sentence in a multiple count case are not necessarily altered when a defendant successfully appeals his conviction on one count," Pimienta-Redondo, 874 F.2d at 14, the facts are necessarily altered in Washington when a conviction is overturned. RCW 9.94A.530(2) ; McAlpin, 108 Wash.2d at 465-67, 740 P.2d 824.
C. Subsequent Decisions Narrowed Pearce -But It Still Applies with Full Force to This Exact Type of Case
¶64 It is true that subsequent United States Supreme Court decisions have limited Pearce. But those decisions reinforce, not undermine, the conclusion that the presumption of judicial vindictiveness applies here.
¶65 The earliest post- Pearce Supreme Court decisions held that a presumption of judicial vindictiveness does not arise when the second sentencer, whether it be judge or jury, differs from the first sentencer. See Chaffin v. Stynchcombe, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) ; Colten v. Kentucky , 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). The Court noted that there is less risk of vindictiveness *306 when the second sentencer "is not the court that is asked to do over what it thought it had already done correctly." Colten , 407 U.S. at 116-17, 92 S.Ct. 1953 ; see also Chaffin , 412 U.S. at 27, 93 S.Ct. 1977. In some instances, the second sentencer may not even have knowledge of the initial sentence. Chaffin, 412 U.S. at 26-27, 93 S.Ct. 1977. Accordingly, no reasonable likelihood-and therefore no presumption-of vindictiveness exists in those situations.
¶66 Two later decisions, McCullough and Smith, underscored Pearce's cautionary statement that no presumption of judicial vindictiveness arises when the sentencing court relies on new, previously unavailable information to impose a harsher sentence at resentencing.
¶67 In McCullough, a defendant received a 20-year prison sentence after his first trial for murder, but a 50-year prison sentence after his second trial. 475 U.S. at 135-36, 106 S.Ct. 976. But the Court upheld the longer sentence against the defendant's Pearce challenge. Reviewing the record, the Court noted that the trial judge explained that she had imposed a 50-year sentence partly because of "the testimony of two new witnesses" at the second trial that had cast the defendant's conduct in a worse light. Id. at 143, 106 S.Ct. 976. The Court held that that testimony and other new information about the defendant's criminal history permissibly supported the increased sentence.[5] Id. at 144, 106 S.Ct. 976. Thus, McCullough clarified that the Pearce presumption does not apply when there is "new, probative evidence" to support the imposition of a harsher sentence at the second proceeding. Id. at 143, 106 S.Ct. 976.
¶68 Smith bolstered that conclusion. In that case, a defendant pleaded guilty to burglary and rape and received two concurrent 30-year prison sentences for the two convictions.
*307 490 U.S. at 795-96, 109 S.Ct. 2201. The defendant later argued that his plea was not knowing and voluntary, and an appellate court permitted him to withdraw the plea. Id. at 796, 109 S.Ct. 2201.
*977 ¶69 The State then prosecuted the defendant for burglary, rape, and sodomy. Id. At the trial, a cacophony of terrible facts emerged:
[T]he victim testified that respondent had broken into her home in the middle of the night, clad only in his underwear and a ski mask and wielding a kitchen knife. Holding the knife to her chest, he had raped and sodomized her repeatedly and forced her to engage in oral sex with him. The attack, which lasted for more than an hour, occurred in the victim's bedroom, just across the hall from the room in which her three young children lay sleeping.
Id. On those facts, "[t]he jury returned a verdict of guilty on all three counts." Id.
¶70 At sentencing, "the trial judge imposed a term of life imprisonment for the burglary conviction, plus a concurrent term of life imprisonment on the sodomy conviction and a consecutive term of 150 years' imprisonment on the rape conviction." Id. Thus, the sentences for the burglary and rape convictions increased as compared to the initial sentences imposed for those crimes under the plea bargain. And the life sentence for the new sodomy conviction far outstripped the 30-year prison terms that the defendant had initially received for the other two convictions.
¶71 But the Supreme Court upheld the longer sentences against a Pearce challenge, even though the same judge had imposed both sets of sentences. The Court pointed out that "[t]he trial court [had] explained that it was imposing a harsher sentence than it had imposed following [the defendant's] guilty plea because the evidence presented at trial, of which it had been unaware at the time it imposed sentence on the guilty plea, convinced it that the original sentence had been too lenient." Id. at 796-97, 109 S.Ct. 2201. And just as the new information made a difference to the trial court, it *308 made a difference to the Supreme Court's Pearce analysis. "As this case demonstrates, in the course of the proof at trial the judge may gather a fuller appreciation of the nature and extent of the crimes charged," it observed. Id. at 801, 109 S.Ct. 2201 (citation omitted). The Court therefore held that when new information about the defendant's conduct comes into the record, the Pearce presumption does not apply. Id. at 802, 109 S.Ct. 2201.
¶72 Colten , Chaffin , McCullough , and Smith confirm that the Pearce presumption applies in this case. The same superior court judge sentenced Brown both times. VRP at 33-34. The State presented no new facts at the resentencing to support the harsher exceptional sentences. In fact, Washington's "real facts" doctrine provided that there were fewer inculpatory facts than existed at the initial sentencing.
¶73 Although the superior court complied with Pearce 's mandate to affirmatively identify its reason for imposing harsher sentences on remand, 395 U.S. at 726, 89 S.Ct. 2072, its explanation of its decision did not-and could not-generate any new facts about the crime. The court stated only a general basis for imposing sentences above the standard range, and it was a basis that was even more justified at the first sentencing when the offender scores were far higher: "I don't think it's appropriate for you to have free crimes in relation to what happened here."[6] VRP at 34. So that's not a new fact, either.
*309 ¶74 Neither Brown's mitigating conduct-ensuring that one of the victims received medication during the criminal episode, id. at 24, 33-nor the existence of "free crimes" changed from one proceeding to the next. If anything, the "number" of Brown's "free crimes" decreased when his offender score *978 dropped from 19 to 11 for the robbery and burglary convictions. In the absence of any new additional inculpatory information, Pearce 's presumption of judicial vindictiveness applies.[7]
¶75 The State has made no effort to rebut that presumption. See Suppl. Br. of Resp't at 8-11 (arguing only that the presumption does not apply). Accordingly, we must presume that Brown's right to due process has been violated, and I would reverse the decision of the Court of Appeals and remand the case for resentencing on that basis.
CONCLUSION
¶76 The Court of Appeals reversed four of Brown's seven convictions due to constitutional error. The judge then imposed a higher sentence on each of his three remaining convictions. There were no new facts to justify the new, higher, sentences. We must therefore apply the Pearce presumption of judicial vindictiveness. The State offers only the facts of reversed convictions to rebut that presumption, and that does not suffice.
¶77 I respectfully dissent.

Offender scores reflect prior criminal history and other current convictions. A score is calculated for each offense, and the score for one offense might differ from the score for another offense. See RCW 9.94A.525 ; Wash. State Caseload Forecast Council, 2017 Washington State Adult Sentencing Guidelines Manual 63, https://www.cfc.wa.gov/PublicationSentencing/SentencingManual/Adult_Sentencing_Manual_2017.pdf [https://perma.cc/78SQ-AK9G].

United States v. Tucker, 404 U.S. 443, 448-49, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) ; Burgett v. Texas, 389 U.S. 109, 115, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) ; State v. Ammons, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986).

As discussed above, the SRA's "real facts" doctrine places additional limits on what can be considered at sentencing under the SRA.

RCW 9.94.530(2) provides that "[o]n remand for resentencing following appeal or collateral attack, the parties shall have the opportunity to present and the court to consider all relevant evidence regarding criminal history, including criminal history not previously presented." RCW 9.94A.525(22) further provides that "[p]rior convictions that were not included in criminal history or in the offender score shall be included upon any resentencing to ensure imposition of an accurate sentence."

Additionally, as in Colten and Chaffin , Pearce's, "presumption [was] inapplicable because different sentencers assessed the varying sentences that [the defendant] received." McCullough, 475 U.S. at 140, 106 S.Ct. 976. A jury initially determined the defendant's sentence, but on retrial, the judge determined the sentence. Id. at 136, 106 S.Ct. 976.

RCW 9.94A.535(2)(c) permits an exceptional sentence above the standard range when "[t]he defendant has committed multiple current offenses and the defendant's offender score results in some of the current offenses going unpunished"-or, in more common parlance, when the defendant gets "free crimes." See State v. Alvarado, 164 Wash.2d 556, 567, 192 P.3d 345 (2008).
The Court of Appeals explained how RCW 9.94A.535(2)(c) operates in State v. Newlum :
If the number of current offenses, when applied to the sentencing grid, results in the legal conclusion that the defendant's presumptive sentence is identical to that which would be imposed if the defendant had committed fewer current offenses, then an exceptional sentence may be imposed.
142 Wash. App. 730, 743, 176 P.3d 529 (2008) ; see also RCW 9.94A.510 (providing sentencing grid).

Division Two has reached the same conclusion. See State v. Ameline, 118 Wash. App. 128, 133, 75 P.3d 589 (2003). "If the only new fact is that [the defendant] has again succeeded on appeal, the new sentence may not be more harsh than the first and second ones." Id. at 134, 75 P.3d 589.